AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of West Virginia



FILED

OCT 2 2 2018

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| John Massey II | ) | Case No. |
| | ) | 2:18-mj-00116 |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ October 19, 2018 _____ in the county of _____ Boone _____ in the

_____ Southern _____ District of _____ West Virginia _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a) | possession with intent to distribute a quantity of heroin |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Todd Berry, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 22, 2018

_____
*Judge's signature*

City and state: _____ Huntington, West Virginia _____

United States Magistrate Judge Cheryl Eifert
*Printed name and title*

## AFFIDAVIT

I, Special Agent Todd A. Berry, being first duly sworn, do hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a criminal complaint for JOHN MASSEY II ("MASSEY"). Upon information and belief, the information set forth herein establishes probable cause for the arrest of MASSEY for violations of 21 U.S.C. § 841 (a)(1) – distribution of and possession with intent to distribute fentanyl, heroin, and methamphetamine.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since October 2006. I presently serve as the Huntington, West Virginia Resident Agency's Violent Crime and Counter Terrorism Coordinator. With these duties I investigate bank robberies, kidnapping, fugitives, Hobbs Act robberies and the illegal distribution of narcotics, as well as other violations of federal law. Prior to my current position, I was the FBI Huntington's Safe Streets Drug Task Force Coordinator. Previous to my position with the FBI, I was a sworn member of the West Virginia State Police for eight years. I have received training and routinely work in the area of criminal investigation and the identification and detection of controlled substances.

3. During my tenure with the FBI, I have successfully investigated, arrested, and prosecuted numerous violent offenders. I have particularized training in the investigation of drug trafficking, homicide and other violent crimes. I have investigated numerous cases involving the use, consumption, sale and possession of illegal controlled substances. I routinely deal with the investigation of trafficking and possession of various controlled substances including marijuana, methamphetamine, cocaine, cocaine base ("crack"),

heroin, pharmaceuticals, and other street drugs.  As a result, I am intimately familiar with the appearance, packaging, and paraphernalia associated with controlled substances. Moreover, I am equally familiar with terminology, methods of communication, habits, techniques, organization, and practices of witnesses in "controlled purchase" situations.  I have applied for and obtained numerous federal warrants to include search and seizures warrants, criminal complaints, and pen register/trap and trace orders.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents/officers and witnesses.  This affidavit is intended to demonstrate that there is sufficient evidence to establish probable cause for this warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

5. Since approximately December of 2017, law enforcement has been investigating fentanyl and heroin distribution in and around Seth, Boone County, West Virginia.  MASSEY was identified a suspected distributer of heroin and fentanyl when law enforcement began investigating an overdose death in December 2017.

6. During the course of this investigation, members of the U.S. 119 Task Force learned from various sources that: (a) MASSEY was distributing a combination of heroin and fentanyl in one-tenth gram packages to individuals known to law enforcement in and around Seth, Boone County, WV; and (b) MASSEY was obtaining between 2 and 3 grams of heroin when he re-supplied, then distributing approximately 25 stamps (one-tenth of a gram) at $40.00 a piece to his network.  The information investigators received was corroborated through a controlled purchase of suspected heroin from MASSEY that occurred on

October 15, 2018, during which MASSEY agreed to sell and did sell two stamps (or two-tenths of a gram) of suspected heroin to a confidential informant for $80.00.

7.  On October 18, 2018, your affiant obtained a search warrant from the United States District Court for the Southern District of West Virginia for the property of JOHN MASSEY, 51 Banks Drive, Seth, Boone County, West Virginia signed by United States Magistrate Judge Cheryl A. Eifert. The search was related to a violation of 21 U.S.C. § 841(a)(1) – possession with intent to distribute fentanyl, heroin, and methamphetamine.

8.  On October 19, 2018, your affiant, along with members of the U.S. 119 Task Force and the Boone County Sheriff's Office, executed the aforementioned warrant.  On approach to MASSEY'S residence, your affiant observed MASSEY and two additional individuals standing around a table holding cellular telephones.  Upon entry into the residence, your affiant, a member of the U.S. 119 Task Force, and a Task Force officer assigned to the Drug Enforcement Agency ("DEA") immediately made contact with MASSEY and the two additional subjects.  Officers ordered MASSEY and the two other individuals to the floor, where the they remained under constant observation until the residence was secured.

9.  Once the residence was secured, MASSEY was placed in handcuffs and assisted to his feet by the DEA Task Force officer.  As MASSEY was being lifted, your affiant observed a clear plastic bag containing approximately 2.5 grams of a brown substance resembling heroin on the floor from where MASSEY was laying.  Your affiant believes, based on his training and experience and the location of the suspected heroin, that MASSEY possessed the aforementioned 2.5 grams of suspected heroin.

10. Based on my training and experience, as well as the investigation into MASSEY'S distribution activities, the 2.5 grams of heroin MASSEY possessed on October 19, 2018,

was a distribution-level amount. As stated above, MASSEY sold heroin in one-tenth (1/10) gram packages for $40.00 in and around Boone County. Based on that pricing scheme, the 2.5 grams he possessed at the time of his arrest had a street value of approximately $1,000.

11. MASSEY'S girlfriend, (hereinafter, "GF"), was one of two other individuals who were present at MASSEY'S residence when the aforementioned warrant was executed. GF provided a statement in which she advised officers that the heroin laying on the floor belonged to MASSEY. GF stated that MASSEY had contacted a third party to drive him (MASSEY) to pick up heroin earlier that evening in St. Albans, WV, and then drive him back to his (MASSEY'S) residence in Seth, WV.

12. GF advised that she and MASSEY typically acquired 2.5 grams of heroin on a near-daily basis. GF stated that after acquiring that amount of heroin, MASSEY would distribute approximately half of it to customers in and around Boone County, and that she and MASSEY would consume the other half.

13. Your affiant believes MASSEY intended to distribute the 2.5 grams of suspected heroin he possessed on October 19, 2018, based on: (a) my assessment that 2.5 grams of heroin, is – based on my training and experience – a distribution-level amount; (b) GF's statement regarding MASSEY'S recent distribution of controlled substances, including herion, in and around Boone County, WV; and (c) 119 Task Force's October 15, 2018 controlled purchase from MASSEY, which corroborates GF's statement.

14. Seth, Boone County, West Virginia is within the Southern District of West Virginia.

15. Based on the above-stated information, your affiant submits that there is probable cause to believe that on or about October 19, 2018, MASSEY possessed and intended to

distribute heroin within the Southern District of West Virginia, in violation of 21 U.S.C.

§ 841(a)(1).


Further your Affiant sayeth naught.

Respectfully submitted,


_Todd A. Berry_

Todd A. Berry
Special Agent, FBI



Sworn to me and subscribed in my presence this 22nd day of October, 2018.


Cheryl A. Eifert
United States Magistrate Judge